IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MIKE PEREZ | Civil No. 11-6833 (RBK/AMD) |
| Plaintiff, | **OPINION** |
| v. | |
| NICOLLETA TURNER, et al. | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Mike Perez's ("Plaintiff") *Bivens* claims against Defendants Nicolleta Turner, Pradip Patel, Jo Ann Hittie, Harrell Watts, J. Norwood, and Donna Zickefoose (collectively, "Individual Defendants"), and his Federal Tort Claims Act ("FTCA") claims against the United States for injuries allegedly suffered during his incarceration at the Federal Corrections Institution at Fort Dix, New Jersey ("FCI Fort Dix"). Currently before the Court are the Individual Defendants' motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (Doc. No. 37) and the United States' motion for summary judgment on Plaintiff's FTCA claims (Doc No. 59).[1] For the reasons stated herein, the Court will grant the Individual Defendants' motion and will grant in part and deny in part the United States' motion.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

---

[1] As a result of this ruling, the Court also denies Plaintiff's motion to stay the disposition of the United States' summary judgment motion (Doc. No. 61).

Plaintiff was an inmate at FCI Fort Dix when the alleged events giving rise to his claim occurred. Plaintiff suffers from numerous health conditions, including asthma, hypertension, ulcerative gastritis, arthritis, and esophageal hernias. Compl. ¶ 9. His claims focus on the nature of medical treatment he received from the staff at FCI Fort Dix's health center.

**A.     The "Cane Incident" with Defendant Turner**

In November 2009, Plaintiff reported to Fort Dix's health services center to obtain a permission pass for the use of a cane that had been issued to him the previous March. *Id.* ¶ 10. After he arrived, Defendant Turner confiscated the cane because she claimed Plaintiff was not authorized to use it. *Id.* ¶ 12. When Plaintiff protested, a disagreement ensued between them, resulting in Plaintiff reminding Defendant Turner that he had previously filed a complaint against her for prescribing him certain medication that he believed had caused him serious side effects. *Id.* He then told her, "I have the right to take you to court." *Id.* ¶ 13. As a consequence, Defendant Turner had two corrections officers take Plaintiff to the prison Lieutenant's office, where he was forced to sit in a chair for over five hours. *Id.* ¶ 14. Defendant Turner later filed an incident report about Plaintiff for his behavior. *Id.* ¶ 16.

**B.     Plaintiff's Medical Treatment**

In November 2010, Plaintiff reported to the prison's health services center with signs of internal bleeding. A doctor at the center advised that his prescription pain medication Indomethacin, which he took in 50 mg doses two or three times daily, be discontinued immediately. *Id.* ¶¶ 17-18. In mid-December, Plaintiff visited the health center to ask Defendant Turner, who served as his primary care physician, about alternative pain medication. He received no response. *Id.* ¶ 20. Around this same time, Defendant Hittie prescribed Defendant

3,000 mg of Tylenol daily to treat his pain.  Plaintiff refused to take the medication because of fears about possible effects the medication might have on his liver.  *Id.* ¶ 21.

In January 2011, an endoscopic procedure performed on Plaintiff revealed the existence of ulcers, a hernia, and other gastric illnesses.  *Id.* ¶ 22.  Again, he went to the health center to request medication for pain he continued to experience in his neck, shoulder, and lower back.  *Id.* ¶ 23.  It appears that he received no new prescriptions at that time.

Plaintiff then filed a request for an administrative remedy, asserting that Defendants Turner, Hittie, and other prison medical staff had failed to attend to his known medical conditions.  *Id.* ¶ 25.  One month later, in April 2011, he again visited the medical center complaining of pain and a burning sensation in his stomach.  *Id.* ¶ 26.  On April 14, 2011, Defendant Hittie, in consultation with Defendant Patel, prescribed Plaintiff a seven day regimen of Prednisone.  *Id.* ¶ 29.  The doctors then took x-rays, which revealed that Plaintiff had Degenerative Joint Disease and Plantar Fasciitis.  In May 2011, Plaintiff again sought a prescription for pain medication.  Defendant Hittie, in consultation with Defendant Patel, recommended Plaintiff take 1,500 mg of Tylenol daily.  *Id.* ¶ 34.  Defendant Hittie seemed to acknowledge that Plaintiff was in a lot of pain.  *Id.* ¶ 35.  Plaintiff continued to seek pain medication.  Finally, in mid-July 2011, Defendant Hittie put Plaintiff back on the Indomethicin medication.  *Id.* ¶ 39.  He also visited a foot specialist, who gave him injections for his Plantar Fasciitis.  *Id.* ¶ 41.

On November 22, 2011, Plaintiff filed the instant suit.  He claims that Defendants Turner and Hittie prescribed him medications, including Prednisone and Indomethacin, that they knew were harmful to Plaintiff.  *Id.* ¶¶ 50-51.  He further alleges that Defendant Patel administered a course of treatment despite its causing pain and risk of permanent injury to Plaintiff, and that he

interfered with recommendations of other medical specialists about how to treat Plaintiff. *Id.* ¶¶ 53-54. Finally, Plaintiff's Complaint alleges that Defendants Zickefoose, Norwood,[2] and Watts are all liable to him because they failed to take action upon learning of Plaintiff's medical condition through the administrative remedy process Plaintiff initiated in March 2011. *See id.* ¶¶ 56-60.

Plaintiff filed his Complaint on November 22, 2011, asserting fourteen separate counts. Counts I-IV claim that all Defendants violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical needs by, among other things depriving him of proper and adequate medical treatment, delaying such treatment, and prescribing treatment they knew to be painful, ineffective, and harmful. *Id.* ¶¶ 64-67. Counts V-VI charge Defendant Turner with violating Plaintiff's First Amendment rights by retaliating against him for engaging in protected speech during the "Cane Incident." Counts VII and VIII are reiterations of Counts I-IV, except that they name only Defendant Hittie. Count IX charges Defendant Hittie with deliberate indifference for prescribing Plaintiff the medication Elavil. *Id.* ¶ 72. Count X alleges that Defendants Hittie and Turner were deliberately indifferent to Plaintiff's serious medical needs when Defendant Turner prescribed him Elavil, and Defendant Hittie prescribed him Tylenol.[3] Counts XI and XII claim that Defendant Patel was deliberately indifferent to Plaintiff's medical needs when he prescribed Plaintiff Prednisone and Indomethacin when it was apparently known that such medicines had certain adverse effects. Finally, Counts XIII and XIV state claims against the United States under the Federal Tort Claims Act for the medical malpractice on the part of Defendants Turner, Patel, and Hittie. *Id.* ¶¶ 77-80. Plaintiff seeks

---

[2] The Complaint actually names Scott Doddrill as Regional Director of the Northeast Division of the Bureau of Prisons. On March 14, 2012, the Court permitted Plaintiff to substitute Defendant Norwood in place of Mr. Doddrill after Plaintiff advised that Mr. Doddrill no longer held this position but had been succeeded by Defendant Norwood (Doc. No. 14).

[3] The Court observes the apparent inconsistency between Count IX and X with respect to the Defendant who actually prescribed him Elavil.

money damages from the Individual Defendants in both their official and personal capacities, as well as money damages from the United States.

On June 22, 2012, the Individual Defendants filed the instant motion to dismiss (Doc. No. 37). Then, on October 3, 2012, the United States filed the instant motion for summary judgment (Doc. No. 59). Action in this matter was delayed for some months while the Court attempted to secure pro bono counsel for Plaintiff. Finally, in April 2013, pro bono counsel filed opposition papers to the Individual Defendants' motion (Doc. No. 81).

Defendants present numerous arguments in support of their motions. The Court will examine each of them in turn.

## II.     UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Defendant United States argues, and the Court agrees, that Plaintiff's claims for money damages against the United States for the allegedly tortious acts of its officers are governed by the Federal Tort Claims Act. 28 U.S.C. § 2671 *et seq.*; *see also* 28 U.S.C. § 1346(b)(1) (vesting the district courts of the United States with "exclusive jurisdiction of civil actions on claims against the United States for money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment"). Courts apply the substantive law of the state where the complained of conduct occurred. *See* 28 U.S.C. § 1346(b)(1).

### A.     **Plaintiff's First Amendment Claim Against Defendant Turner for the Cane Incident**

A plaintiff seeking relief under the FTCA must first present his claim to an appropriate federal agency. 28 U.S.C. § 2401(b). If that claim is denied, the plaintiff then has six months to file an FTCA action in federal court; failure to do so will render his claim "forever barred." *Id.*

In this case, Plaintiff did submit an administrative tort claim on to the Bureau of Prisons on January 31, 2011 for injuries he allegedly suffered after Defendant Turner allegedly ordered two corrections officers to force Plaintiff to sit in a chair for five hours. Pl.'s Decl. Exh. A (Doc. No. 52-1). It was denied by the Bureau's Northeast regional office on April 14, 2011. Thus, Plaintiff had six months, or until October 14, 2011, to filed his FTCA claim in federal court. This action, however, did not commence until November 22, 2011 (Doc. No. 1). Therefore, because Plaintiff did not adhere to the FTCA's clear statutory guidelines, his claim is "forever barred," *see* 28 U.S.C. §2401(b), and Defendant United States is entitled to summary judgment on Plaintiff's claims regarding the Cane Incident.

**B.    Plaintiff's Medical Malpractice Claims**

Counts XIII and XIV of Plaintiff's Complaint state identical FTCA claims against the United States for medical malpractice allegedly committed by Defendants Turner, Hittie, Patel, and others. Compl. ¶¶ 77-80. The United States moves for summary judgment on these Counts on the basis of Plaintiff's failure to file a so-called "Affidavit of Merit," which is required under New Jersey law to support a claim for medical malpractice.

Because the conduct giving rise to Plaintiff's claim occurred in New Jersey, that state's substantive tort law applies to Plaintiff's FTCA claims. *See* 28 U.S.C. § 1346(b)(1). Under New Jersey law, a plaintiff asserting a medical malpractice claim must serve upon the defendant licensed physician or health care facility an "Affidavit of Merit." N.J.S.A. § 2A:53A-27. In this affidavit, an "appropriate licensed person" must aver that there exists at least "a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupation standards or treatment practices." *Id.* In essence, the Affidavit of Merit requirement ensures that

plaintiffs in malpractice cases make a threshold showing that their claims have some merit so that frivolous lawsuits can be identified and disposed of at an early stage of litigation. *Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 499 (N.J. 2001).

It is undisputed that this requirement applies to Plaintiff's FTCA claim against the United States in this action. *See* Pl.'s Br. in Support of Extension of Time to File an Affidavit of Merit 2 (Doc. No. 78); *see also McLoyd v. United States*, No. 04-605, 2006 WL 2135837 at *3 (D.N.J. July 27, 2006) (determining that the Health Services Unit at FCI Fort Dix qualifies as a "health care facility" under New Jersey law and that therefore a prisoner's claim for medical malpractice arising out of treatment at that facility triggers New Jersey's Affidavit of Merit requirement); *Horne v. United States*, 223 Fed. App'x 154, 156 (3d Cir. 2007) ("[Plaintiff's] complaint triggered the requirements of the New Jersey Affidavit of Merit statute because he complained of the medical care he received in [another New Jersey federal corrections] healthcare facility.").

The Affidavit of Merit must be filed within sixty days from the date the defendant files an answer to the complaint. N.J.S.A. § 2A:53A-27. The statute provides that a court "may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause." *Id.* Notwithstanding this apparent limit on the court's discretion, a court need not dismiss a plaintiff's medical malpractice claim with prejudice if the failure to file an Affidavit of Merit within the statutory time period was due to extraordinary circumstances. *Chamberlain v. Giampapa*, 210 F.3d 154, 162 (3d Cir. 2000). Such circumstances must be "exceptional and compelling"; they cannot arise out of an attorney's "mere carelessness or lack of proper diligence." *Id.* At bottom, the extraordinary circumstances inquiry requires the court to undertake a fact-sensitive, case-by-case analysis. *Mathis v.*

*Pomerentze*, No. 08-6129, 2012 WL 6152126 at*3 n.7 (D.N.J. Dec. 11, 2012) (citing *Tischler v. Watts*, 827 A.2d 1036, 1038 (N.J. 2003)).

In this case, Plaintiff contends that he knew all along he had to file an Affidavit of Merit for his FTCA medical malpractice claim. Pl.'s Br. in Support of an Extension of Time to File an Affidavit of Merit 2. Indeed, he made clear in his motion for the appointment of pro bono counsel that such counsel was necessary in order for him to obtain an expert who would assist in the preparation and filing of his Affidavit. Pl.'s Mot. for Pro Bono Counsel 3-4 (Doc. No. 36). The Court subsequently granted Plaintiff's motion, noting specifically that part of its reason for granting the motion was to help Plaintiff address this very issue. Order granting Motion to Appoint Pro Bono Counsel 12 (Doc. No. 51).

The Court granted the application to appoint pro bono on September 13, 2012 (Doc. No. 51). Then, on September 21, 2012, it granted Plaintiff the statutorily-provided sixty-day extension with which to file his Affidavit of Merit (Doc. No. 55), giving Plaintiff until October 2, 2012. In the order, the Court noted that, in light of its decision to appoint pro bono counsel for Plaintiff, and because the process of obtaining such counsel could take some time, it might be necessary to toll the Affidavit of Merit filing deadline "so as to promote fair and efficient adjudication." *Id.* (citing *Hertz Corp. v. Gator Corp.*, 250 F. Supp. 2d 421, 424 (D.N.J. 2003)).

In the event, it required four full months for pro bono counsel to be retained in this matter. *See* Notice of Appearance by Jeffrey Lindsay on behalf of Mike Perez, January 22, 2013 (Doc. No. 68). Within two weeks of making his appearance, Plaintiff's attorney sought, and subsequently received, permission to file a brief in support of a motion to file an Affidavit of Merit out of time (*See* Doc. Nos. 72, 76, 78).

Considering these events, the Court finds that extraordinary circumstances exist to excuse Plaintiff's failure to timely file an Affidavit of Merit. The fact that it took more than four months to find a pro bono attorney to represent Plaintiff,[4] combined with the fact that a major purpose for granting Plaintiff's application for pro bono counsel was to help him prepare this Affidavit of Merit, convince the Court that Plaintiff should not have his FTCA claims dismissed with prejudice for missing the filing deadline on October 2, 2012. Accordingly, it will order Plaintiff to file his Affidavit of Merit within thirty days of the date of this Opinion. *Accord Abraham v. Rothkopf*, No. 07-2254, 2008 WL 3413850 (D.N.J. Aug. 8, 2008) (finding that the plaintiff's failure to file an Affidavit of Merit was excused under the related "substantial compliance" doctrine and ordering the plaintiff to serve Defendants with his affidavit within thirty days). As a result, Defendant's motion for summary judgment on Plaintiff's FTCA medical malpractice claims will be denied.

## III.    INDIVIDUAL DEFENDANTS' 12(B)(1) MOTION TO DISMISS

### A.    Plaintiff's Claims against Defendants in Their Official Capacity

Plaintiff's Complaint seeks monetary relief against all named Defendants in their official capacities. *See* Compl. Prayer for Relief ¶¶ 2-5. It is well-established, however, that "an action against prison officials in their official capacities constitutes an action against the United States and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Webb v. Desan*, 250 Fed. App'x 468, 471 (3d Cir. 2007) (affirming district court's dismissal of prisoner's *Bivens* claim for damages asserted against numerous Bureau of Prisons employees in their official capacities); *see also Biase v. Kaplan*, 852 F. Supp. 268, 285 n. 14 (D.N.J. 1994) (noting that *Bivens* claims asserted against federal actors in their official capacity are to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1)) (citing *Williamson v.*

---

[4] The Court notes that Plaintiff had no role in the pro bono counsel appointment process.

*United States*, 815 F.2d 368, 380 (5th Cir. 1987)). Because no such waiver of immunity exists in the present context, the Court will dismiss all of Plaintiff's claims for money damages asserted against Defendants Turner, Patel, Hittie, Zickefoose, Norwood, and Watts in their official capacities.

**B.      Plaintiff's Claims against Defendant Hittie**

Plaintiff's Complaint also asserts numerous *Bivens* claims against Defendant Hittie in her individual capacity. Counts I-IV, VII-X. All of these claims are based on alleged actions that Defendant Hittie took in her capacity as Chief Pharmacist at FCI Fort Dix. Defendant Hittie performs this function as a part of her duties as a Captain in the Public Health Service. Decl. of Jo Ann Hittie, ¶ 1.

Defendant Hittie's status as an officer in the Public Health Services requires that the Court dismiss Plaintiff's *Bivens* claims against her. *See Hui v. Castaneda*, 559 U.S. 799, 130 S.Ct. 1845, 1848 (2010) (holding that 42 U.S.C. § 233(a) renders Public Health Service officers and employees "not personally subject to *Bivens* actions for harms" arising out of actions taken within the scope of their office or employment). The correct avenue for presenting such claims is to file them against the United States under the FTCA, which Plaintiff has done here. *See id.* at 1851. Thus, the Court will grant Defendant's motion to dismiss all *Bivens* claims against Defendant Hittie.

**IV.    INDIVIDUAL DEFENDANTS' 12(B)(6) MOTION TO DISMISS**

**A.     Plaintiff's Eighth Amendment Deliberate Indifference Claims**

   *i.     Exhaustion of Remedies*

Defendants argue that Plaintiff's deliberate indifference *Bivens* claims should be dismissed for failure to exhaust administrative remedies. While acknowledging that Plaintiff did

file an administrative grievance concerning the medical treatment he received at FCI Fort Dix, and that he appealed the denials of his claims to the highest possible administrative authority, they nevertheless argue that his grievance failed to "present the *Bivens* claims against the individually-named defendants that he now asserts in this action." Def.'s Br. in Support of Mot. to Dismiss 13. Plaintiff responds that the substance of his administrative grievance, while not technically styled as a *Bivens* suit, contained sufficient factual allegations to fairly put the individual Defendants, as well as the Bureau of Prisons, on notice of a potential Eighth Amendment deliberate indifference claim. Pl.'s Supplemental Opp. Br. 3.

The Prison Litigation Reform Act, which applies to inmate suits about prison life, provides that "[n]o action shall be brought with respect to prison conditions . . . under any . . . Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2006). This exhaustion requirement applies to *Bivens* actions. *Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000).

The Bureau of Prisons has set out its administrative remedy procedure in 28 C.F.R. § 542.10 *et seq.* and in Program Statement 1330.13, *available at* www.bop.gov/policy/progstat/1330_013.pdf. These documents provide no meaningful guidance about the specificity with which a prisoner must present his administrative grievance in order to preserve his right to assert a related claim in federal court. While the Third Circuit has yet to address this issue in a comprehensive manner, it has noted generally that "[t]he primary purpose of a grievance is to alert prison officials to a problem." *Williams v. Beard*, 82 F.3d 637, 640 (3d Cir. 2007). Such language has led at least one court in this District to embrace the standard adopted by six circuit courts: that a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Olivares v. United States*, No. 07-3476, 2010 WL 5251429

11

at *4 (D.N.J. Dec. 15, 2010) (citing *Griffen v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009)) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (collecting cases from the Second, Fifth, Sixth, Seventh, Ninth, and Tenth Circuit Courts)). This Court sees no reason to reject such a sensible interpretation, and Defendants cite to no binding precedent suggesting that the Court must require heightened specificity in this case. Thus, the Court looks to the grievance filed by Plaintiff to determine whether it provided the Bureau of Prisons with sufficient notice of the "nature of the wrong" for which Plaintiff now seeks redress. *See Olivares*, 2010 WL 5251429 at *4.

Defendants attached a copy of administrative grievance filings in this matter to its motion to dismiss Plaintiff's claims (Doc. No. 37-3).[5] In his submissions, Plaintiff makes reference to his ailments, his disagreement about the quality and effectiveness of the care he was receiving, his questions about some Defendants' professional qualifications, and his continuing pain. While he fails to mention terms like "violation of Eighth Amendment rights" or "*Bivens* action," Plaintiff's descriptions are sufficient to put the Bureau of Prisons on notice of the "nature of the wrong" that now forms the substance of the Complaint he has filed in this Court. *See Olivares*, 2010 WL 5251429 at *4. That is, he makes clear that he is in severe pain, that his pain could be mitigated by proper medical care, and that he has not received such care after requesting it from Defendants Turner, Patel, and Hittie. Thus, the Court will not grant Defendants' motion to dismiss Plaintiff's deliberate indifference claims for failure to exhaust administrative remedies.[6]

---

[5] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court may consider documents that are explicitly relied upon in the complaint even if the plaintiff fails to attach the document. *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); accord *Durant v. Horton*, No. 07-93, 2008 WL 2510661 at *3 n.1 (D.N.J. June 19, 2008) (considering copies of plaintiff's administrative grievances which were attached to the defendant's 12(b)(6) motion but not included in plaintiff's original complaint because these grievance records were "integral to Plaintiff's underlying claims").

[6] On the other hand, nowhere in his administrative grievance does Plaintiff mention the "Cane Incident" with Defendant Turner that forms the basis of his First Amendment retaliation claim. This exchange happened a full year

### ii. Respondeat Superior Theory of Liability

Plaintiff's Complaint makes clear that the only Defendants named in this action who actually administered the medical care of which he now complains were Defendants Turner, Patel, and Hittie. His claims against the remaining individual Defendants are based on indirect theories of liability. Specifically, he alleges that Defendants Zickefoose, Norwood, and Watts are liable to him for "sanctioning the detrimental and, unlawful medical practices" provided by the other Defendants in this action, and for "failing to act through [their] supervisory powers, by failing to investigate, as to whether plaintiff [sic] medical treatment received by the above named defendants is proper under Bureau of Prisons (BOP) and community standards." Compl. ¶¶ 55-59. The Complaint contains no allegations that Defendants Zickefoose, Norwood, and Watts were personally involved in Plaintiff's complained-of medical treatment decisions.

Defendants argue that a *Bivens* claim cannot proceed against these three Defendants on what amounts to a respondeat superior theory of liability. Def.'s Br. in Support of Mot. to Dismiss 13-15. Plaintiff's Supplemental Brief in Opposition to the Motion prepared by his pro bono counsel does not dispute this point. The Court agrees that a *Bivens* cause of action based on a theory of deliberate indifference to a prisoner's proper medical care cannot generally lie against persons who had no direct involvement in that plaintiff's medical treatment. *Accord Balter v. United States*, 172 Fed. App'x 401, 403 (3d Cir. 2006). Instead, a plaintiff must plead that each Government official has violated the plaintiff's constitutional rights "through the official's *own individual actions*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). Accordingly, because the only connection these three Defendants had to Plaintiff's

---

before the events reference in his grievance. Thus, there is no way that the Bureau of Prisons, much less Defendant Turner herself, could have been on notice about the "nature of the wrong" for which Plaintiff would seek redress in a *Bivens* action were his administrative claims to be denied. Thus, the Court will dismiss Plaintiff's First Amendment Retaliation Claims for failure to exhaust administrative remedies (Counts V, VI).

alleged inadequate medical care was through their roles in the administrative grievance process, Plaintiff can establish only the sort of post-hoc "knowledge and acquiescence" in the Defendant medical officers' treatment decisions that the Supreme Court of the United States has specifically rejected as a theory of *Bivens* liability.  *See id.* at 677; *see also Pressley v. Beard*, 266 Fed. App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed prison officials named in a prisoner's § 1983 action who were sued "based on their failure to take corrective action when grievances or investigations were referred to them"); *Jackson v. Grondolsky*, No. 09-5617, 2011 WL 13704 at *1 n.1 (D.N.J. Jan. 3, 2011) (surveying applicable Third Circuit precedent regarding supervisory liability in the prisoner medical treatment context and holding that no cause of action against a prison warden would lie where the only allegation supporting the claim was that the warden failed to take action after being presented with plaintiff's administrative grievances); *Garvey v. Martinez*, No. 08-2217, 2010 WL 569852 at *7 (M.D. Pa. Feb. 11, 2010) (rejecting prisoner's *Bivens* deliberate indifference claim against defendant prison warden where the warden was not personally involved in decisions regarding plaintiff's medical care and became aware of plaintiff's situation solely through the administrative grievance process) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)); *Whetstone v. Ellers*, No. 08-2306, 2009 WL 3055354 at *8 (M.D. Pa. Sept. 24, 2009) ("In the Third Circuit, merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim.").  As a result, the Court will grant the motion to dismiss Plaintiff's *Bivens* claims against Defendants Zickefoose, Norwood, and Watts in their individual capacities for failure to state a claim upon which relief can be granted.

    iii.    *Sufficiency of Plaintiff's Allegations against Defendants Turner and Patel*

What remains of Plaintiff's *Bivens* claims at this point boils down to the following: that Defendants Turner and Patel violated Plaintiff's Eighth Amendment rights by displaying a deliberate indifference to his serious medical needs. Compl. Counts I-IV, XI, XII. These Defendants move to dismiss these counts, arguing that the factual allegations in Plaintiff's Complaint are insufficient to state a prima facie deliberate indifference claim.

It is well-established that in order for a prisoner to establish a constitutional violation on the basis of being provided inadequate medical care, he must demonstrate: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. [citation omitted]. A medical need is also serious where the denial of treatment would result in the 'unnecessary and wanton infliction of pain,' [citation omitted], or 'a life-long handicap or permanent loss.'" *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003).

A prison official displays deliberate indifference when he (1) knows of a prisoner's need for medical treatment yet refuses to administer it; (2) delays medically necessary treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *Moriarty v. de LaSalle*, No. 12-3013, 2012 WL 5199211 at *5 (D.N.J. Oct. 19, 2012) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Stated another way, the inquiry is whether the defendant in question displayed an "obduracy and wantonness" that demonstrates a recklessness or a conscious disregard of a serious risk to the prisoner's health and safety. *See Rouse*, 182 F.3d at 197 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986) and *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Demonstrating mere negligence or even professional

15

malpractice does not on its own amount to deliberate indifference that would sustain an Eighth Amendment *Bivens* claim. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Simply stated, Plaintiff's factual allegations do not support an Eighth Amendment deliberate indifference claim against either Defendant Turner or Defendant Patel for the denial of medical care. First, nowhere does his Complaint even explicitly allege that he was denied medical treatment by these Defendants. Instead, Plaintiff complained of pain. He was prescribed Tylenol but refused to take it because of his own views about the drug's possible side effects. Compl. ¶ 21. He received an endoscopy which showed the presence of gastric illnesses. *Id.* ¶ 22. He was then prescribed Prednisone after being examined by Defendant Patel. *Id.* ¶ 33. The rest of his factual allegations make no mention of either Defendant Patel or Defendant Turner, other than to say that Defendant Turner was his primary care physician. *Id.* ¶ 45. Allegations that his sick call appointments were cancelled, e.g., *id.* ¶¶ 27-28, are nowhere near sufficient to show the deliberate indifference by prison officials necessary to establish an Eighth Amendment violation. Instead, it appears that Plaintiff was simply unsatisfied with the care he received. But "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). For these reasons, the Court will grant Defendants Patel and Turner's motion to dismiss Plaintiff's Eighth Amendment deliberate indifference counts against them for failure to state claims upon which relief may be granted.

In reaching this conclusion, the Court notes that it is at least conceivable that Plaintiff, were he given a chance to amend his pleadings, might be able to allege sufficient facts to sustain a *Bivens* claim against either Defendant Turner or Defendant Patel. For this reason, the Court will dismiss Plaintiff's claims against these Defendants without prejudice, and will grant Plaintiff

16

thirty days to submit an Amended Complaint that conforms to the legal standard for Eighth Amendment deliberate indifference liability set forth in this Opinion.

## V. CONCLUSION

For the reasons stated above, the Court will dispose of the pending motions in the following manner. The United States' motion for summary judgment will be granted in part and denied in part. It is granted with respect to Plaintiff's FTCA First Amendment retaliation claim, but it is denied with respect to Plaintiff's FTCA medical malpractice claim. Plaintiff shall file an Affidavit of Merit with the Court within thirty (30) days.

With respect to Plaintiff's *Bivens* claims, Plaintiff's First Amendment retaliation claims against Defendant Turner will be dismissed with prejudice for failure to exhaust administrative remedies. Plaintiff's claims against all Individual Defendants in their official capacities will be dismissed with prejudice. Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Hittie, Zickefoose, Norwood, and Watts will be dismissed with prejudice. His deliberate indifference claims against Defendants Patel and Turner in their individual capacities will be dismissed without prejudice for failure to allege facts that would support a plausible claim for relief. Plaintiff shall have thirty (30) days from the date of this Opinion in which to amend his Eighth Amendment claims against these two parties. The Court will issue an appropriate order.


Dated:  6/25/2013                                                       /s/ Robert B. Kugler
                                                                                   ROBERT B. KUGLER
                                                                                   United States District Judge