NOT FOR PUBLICATION (Doc. No. 114)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MIKE PEREZ | : |
| Plaintiff, | : Civil No. 11-6833 (RBK/KMW) |
| v. | : **OPINION** |
| NICOLETTA TURNER, et. al., | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Defendants Nicoletta Turner-Foster, M.D. ("Dr. Turner-Foster"), Pradip Patel, M.D. ("Dr. Patel"), and the United States of America (the "United States"), (collectively "Defendants"), for summary judgment pursuant to Fed. R. Civ. P. 56. The motion concerns Plaintiff Mike Perez's ("Plaintiff") Bivens claim that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. For the reasons set forth in this Opinion, Defendants' motion is granted.

I. BACKGROUND[1]

Plaintiff is a federal inmate at the Fort Dix Federal Correctional Institution ("Ft. Dix"), where he has been incarcerated since July 12, 2005. (Defs.' SMF ¶¶ 1, 3.) Plaintiff suffers from

---

[1] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the non-moving party. See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993). Here, Plaintiffs have stipulated to the majority of Defendants' Statement of Material Facts ("Defs.' SMF"). (See Pl.'s Resp, to Defs.' Statement of Material Facts ("Pl.'s SMF") ¶¶ 1-33, Doc. No. 118 (admitting all facts set forth by Defendant save for facts alleged in paragraphs 12, 19, 25).) Therefore, the Court relies on the undisputed facts, Plaintiff's Statement of Facts, and exhibits cited therein.

1

chronic pain caused by a number of medical conditions such as gastric ulcers and a degenerative joint disease in his lower back.[2] From approximately November 2010 to August 2011, Plaintiff repeatedly reported to Ft. Dix health care professionals with complaints of chronic epigastric pain as well as pain in his neck, lower back, and foot. (See generally id.) During such time, Plaintiff's primary care physicians were Defendants Dr. Turner-Foster and Dr. Patel,[3] both of whom were responsible for the care their respective teams provided to Plaintiff. Plaintiff argues that Dr. Turner-Foster and Dr. Patel were deliberately indifferent to his serious medical needs in violation of this Eighth Amendment rights. The relevant facts are as follows.

On November 4, 2010, Plaintiff reported to Sick Call complaining of epigastric pain and vomiting blood. (Defs. SMF ¶¶ 6–7; Patel Decl. ¶ 6.) At that time, he was taking Indomethacin and Pregabalin for his chronic pain, as well as Prilosec for Gastroesophageal Reflux Disease (GERD). A mid-level practitioner treated Plaintiff and recommended that he see a gastroenterologist. (Defs. SMF ¶ 7.) He prescribed Mylanta for Plaintiff's gastritis and discontinued his Indomethacin to determine if he was suffering from a gastric ulcer induced by a Non-Steroidal Anti-inflammatory Drug ("NSAID"). (Id. ¶7.) Plaintiff was also prescribed Meloxicam for pain management and was continued on Prilosec. (Id.)

On November 8, 2010, Plaintiff saw the gastroenterologist, who suspected the Indomathecin was causing him to vomit blood. (Id. ¶ 8.) Because he was unable to rule out an ulcer induced by NSAID, he recommended Plaintiff undergo an upper endoscopy. (Id.; Patel Decl. ¶ 9.) Later in November, Plaintiff was referred to the pharmacist to discuss pain

---

[2] The list of Plaintiff's ailments is quite long and includes intrinsic bronchial asthma, arterial hypertension, acid reflux, ulcerative gastritis, duodenitis and hiatal esophageal hernias, cervicalgia at C3-C4, spinal arthritis, bilateral shoulder joint arthralgia, degenerative spondylosis, osteoarthritis, and plantar fasciitis, among others. (Pl.'s Br. 7; see also Amended Compl. ¶ 3, Doc. No. 86.)
[3] Dr. Turner-Foster was Plaintiff's primary care physician from November 2010 to April 2011. Dr. Patel has served as his primary care physician since April 2011. (Patel Decl. ¶ 4, Doc. 114-4.)

2

management. (Defs. SMF ¶ 9.)  Plaintiff credited his pain to the discontinuation of the Indomethacin and the ineffectiveness of the Meloxicam. (Id.)

Plaintiff's epigastric pain continued into December.  On December 6, 2010, he reported to Sick Call, where a mid-level physician prescribed him Bismuth Subsal Oral Suspension for pain.  (Id. ¶ 10.)  Four days later, Plaintiff again reported to Sick Call complaining of pain.  (Id. ¶ 11.)  He informed the treating physician that he could not take Tylenol and that Indomethacin was effective but discontinued because of the potential gastrointestinal side effects.  (Id.)  The physician initially considered treating Plaintiff with a Ketorolac injection, but a consultation with Dr. Turner-Foster revealed that such treatment was inappropriate because it was an NSAID.  (Id.)  At this time, Plaintiff's endoscopy was still pending, and therefore, the doctors had not yet ruled out an NSAID-induced gastric ulcer.  Therefore, Dr. Turner-Foster and the mid-level physician referred Plaintiff to the pharmacy pain clinic. (Id.)

On December 11, 2010, Plaintiff met with the chief pharmacist, who discussed the possibility of Acetaminophen and antiepileptic drugs such as Keppra and Valproic Acid, but those medications were ultimately not prescribed because Plaintiff attested they had previously been ineffective.  (See Def.'s SMF ¶ 12; Pl.'s SMF ¶ 12.)  Four days later, a mid-level practitioner treated Plaintiff's pain with Methylprednisolone and a one-time-only Ketorolac injection, and continued his treatment with Pregabalin.  (Def.'s SMF ¶ 13.)  Plaintiff continued to be treated for his gastric issues and undergo diagnostic testing throughout December 2010.  (Id. ¶ 13.)

On January 19, 2010, Plaintiff underwent the recommended endscopy, which led to a diagnosis of a hernia, gastritis, and multiple ulcers, and a finding of past duodenal ulcer disease. (Id. ¶ 15.)  The doctor again advised caution in treating Plaintiff with NSAIDS and

3

recommended increasing his dosage of Prilosec and a follow-up to rule out a bacterial stomach infection known as H. pylori infection.  (Id. ¶ 15.)

In February 2011, medical records show that Plaintiff reported to Sick Call on two occasions complaining of back pain.  (Id. ¶¶ 16–17.)  The mid-level practitioner treating Plaintiff first suggested Acetaminophen but then, after consulting with Dr. Turner-Foster and Dr. Patel, treated him with Nalbuphine Hydrochloride injections when his pain became too severe.  (Id.)  After Plaintiff's second February visit, Dr. Patel requested an x-ray of Plaintiff's spine.  (Id. ¶ 17.)

In March 2011, Plaintiff saw the Ft. Dix medical team on three occasions:  March 3, March 18, and March 25.  The first appointment was a routine visit with the Chronic Care Clinic, where he and Dr. Turner-Foster discussed all of Plaintiff's chronic pain and gastrointestinal conditions.  After that meeting, Dr. Turner-Foster renewed Plaintiff's medications for pain and gastric issues.  (Id. ¶ 18).  Dr. Turner-Foster advised Plaintiff to continue to meet with the chief pharmacist for pain management.  (Id.)  On March 18, Plaintiff met with the chief pharmacist, but the two were unable to agree on a course of treatment for Plaintiff's pain.  (Pl.'s SMF ¶ 19.)  The pharmacist recommended an increase in Pregabalin and Acetaminophen, but neither was immediately prescribed because of Plaintiff's high blood pressure.  (Id.)  Finally, on March 20, Plaintiff reported to Sick Call to receive the results of the H. Pylori test, which, although came back positive, gave no indication that Perez had an infection.  (Def.'s SMF ¶ 20.)  Plaintiff was advised to avoid eating spicy or greasy meats, coffee, and caffeinated tea.  (Id.)

In April 2011, an x-ray of Plaintiff's back revealed he was suffering from mild degenerative joint disease, among other things.  (Id. ¶ 22.)  He requested different pain medication, but because of Plaintiffs gastrointestinal issues, the medical team would not

4

prescribe him an NSAID. (Id.) Plaintiff was prescribed Methylprednisolone, a steroid, for four days and his Pregabalin was renewed. (Id. ¶ 23.)

On May 13, Plaintiff and the chief pharmacist were again unable to agree on a course of treatment. The pharmacist discouraged the long-term use of steroids because they could irritate Plaintiff's already-existing gastrointestinal issues. (Id. ¶ 24.) No additional medications were recommended. (Id.) Dr. Patel ultimately canceled the Methylprednisolone because it was a steroid. (Id. ¶ 23.)

In June and July, Plaintiff saw the medical staff on four occasions. On June 6, he requested a renewal of his pain medication, and Dr. Patel renewed his Pregabalin for 30 days. (Id. ¶ 26.) Three days later, he sought more pain medication but did not receive any in light of his upcoming appointment with the clinical director on June 17, 2011. (Id. ¶ 27.) On July 15, 2011, Plaintiff met with the chief pharmacist to discuss pain management, and the pharmacist prescribed a 25 mg dosage of Indomethacin for his pain and an increased dosage of Prilosec for his gastric issues. (Id. ¶ 28.) On July 20, he reported to Sick Call with complaints of bloating and heart burn and was not prescribed any new medications. (Id. ¶ 29.)

In August 2011, Plaintiff saw medical personnel three times. On August 3, a podiatry specialist diagnosed Plaintiff with plantar fasciitis and high arch. (Id. ¶ 30.) The specialist gave Plaintiff an injection for pain and recommended he receive new inserts for his shoes. (Id.) On August 24, Plaintiff received treatment for his epigastric pain and was referred to gastroenterology. (Id. ¶ 31.) The following week, Dr. Patel saw Plaintiff for a chronic care appointment and renewed Plaintiff's 25 mg dose of Indomathecin. (Id. ¶ 32.)

In his supplemental statement of facts, Plaintiff emphasizes that from January 23, 2012 to August 23, 2012, Dr. Patel treated Plaintiff with narcotics and that therefore non-narcotic

5

treatment was not the only option to treat his pain from November 2010 to August 2011. (Pl.'s Supp. SMF ¶ 1–2.) Plaintiff generally avers that Defendants' failure to adequately manage and treat his pain constitutes deliberate indifference to his serious medical needs.

## II. LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. Id. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on

6

which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

#### A. Jurisdiction

Plaintiff brings his Eighth Amendment claim against Defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides a cause of action against federal officials alleged to have violated a citizen's constitutional rights. Thus, while Bivens allows a cause of action against Dr. Turner-Foster and Dr. Patel, Plaintiff's claim against the United States is improper. It is well-settled that the United States has not consented to suit under Bivens. See Bivens, 403 U.S. at 410 ("However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit."); Albert v. Yost, 431 F. App'x 76, 81 (3d Cir. 2011) ("A Bivens claim can be maintained only against individual federal officers, not against a federal entity."). Thus, Plaintiff's claim is dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

#### B. Plaintiff's Eighth Amendment Against Dr. Turner-Foster and Dr. Patel

Plaintiff alleges that Dr. Patel and Dr. Turner-Foster violated his Eighth Amendment rights. The Eighth Amendment prohibition of cruel and unusual punishment protects a prisoner's right to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). To properly state a claim for a violation of this right, a plaintiff must allege "(1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

"Because society does not expect prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillan, 503 U.S. 1, 9 (1992). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Maldonado v. Terhune, 28 F. Supp. 284, 289 (D.N.J. 1998) (internal quotation marks omitted). Further if a denial or delay of medical attention "causes an inmate to suffer a life-long handicap or permanent loss," serious medical need may also be found. Id. (quoting Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Here, the parties do not dispute that Plaintiff's medical needs were serious.

Once a serious medical need has been shown, an inmate then must show that prison officials acted with "deliberate indifference" to his serious medical need. See Natale, 318 F.3d at 582. "Deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in criminal law." Id. at 582 (internal quotation marks omitted). This standard requires proof that the prison official disregarded a known and "excessive risk to inmate health or safety." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (D.N.J. 2003)).

A prison official manifests deliberate indifference in a number of ways. The Third Circuit has found deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Where a prison doctor insists on continuing a treatment course knowing that the treatment is "painful,

8

ineffective, or entail[s] substantial risk of serious harm to prisoners," Estelle's deliberate indifference standard is also satisfied. White v. Napolean, 897 F.2d 103, 109 (3d Cir. 1990).

The deliberate indifference standard, however, gives considerable deference to prison medical personnel in diagnosing and treating inmates. Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Id. (quoting Bowring v. Godwin, 552 F.3d 44, 48 (4th Cir. 1977)). As such, a mere "disagreement over medical judgment" does not rise to the level of an Eighth Amendment violation. White, 897 F.2d 103, 109 (3d Cir. 1990); see also Gause v. Diguglielmo, 339 Fed. App'x 132, 136 (3d Cir. 2009) (holding that a prisoner's dissatisfaction with pain medication prescribed "at most . . . amounts to a disagreement over the exact contours of his medical treatment.").

After applying the two-part test for deliberate indifference, the Court finds that Plaintiff's Eighth Amendment claim must fail. The undisputed facts demonstrate that Dr. Turner-Foster and Dr. Patel and their respective teams met with Plaintiff multiple times on account of his chronic pain. They treated Plaintiff's pain with multiple medications, including but not limited to, Meloxicam, Methylprednisolone, and a Ketorolac injection. They referred him to a gastroenterologist and a podiatrist to further determine the source of his ailments. They also ordered multiple diagnostic tests, including an x-ray of his lower back and an endoscopy of his gastric region. That Dr. Turner-Foster and Dr. Patel provided Plaintiff with such extensive care undermines his claim that they were deliberately indifferent to his medical needs.

Plaintiff disputes only a few of Defendants' proffered facts. He disputes the reasons why he refused to take certain medications, (Pl.'s SMF ¶ 12, 19), and why he did not meet with the

9

clinical director on May 18, 2011, (Pl.'s SMF 25). These are not material issues of fact necessitating a trial. First, regardless of why Plaintiff felt uncomfortable taking Acetaminophen and other recommended medications, the fact still remains that Defendants repeatedly met with Plaintiff, ordered diagnostic testing, and treated him with an assortment of pain medications. Second, Plaintiff and Defendants agree that Plaintiff's appointment with the clinical director was rescheduled because of an institutional recall that required all inmates to be returned to their housing units. (Defs.' SMF ¶ 25; Pl.'s SMF ¶ 25.) This recall, which was out of Defendants' control, hardly displays deliberate indifference on their part.

Plaintiff argues that Dr. Turner-Foster and Dr. Patel "failed to provide medication which would even moderately relieve the chronic, constant pain suffered as a result of his cervical spine, shoulder, low back, foot, and ulcer conditions." (Pl.'s Br. 18.) However, at most, Plaintiff's contention amounts to a disagreement over medical care. See Gause, 339 Fed. App'x at 136. Medical disagreements simply do not amount to an Eighth Amendment violation. Moreover, Defendants' decision concerning the proper pain medication for Plaintiff's condition is precisely the type of decision committed to a doctor's "sound medical judgment" and does not amount to an Eighth Amendment violation. White, 897 F.2d 103, 109 (3d Cir. 1990).

Plaintiff further argues that treatment with narcotics was available to treat his chronic pain. (Pl.'s Br. 17). Again, however, this amounts to a disagreement with the care he received, not an Eighth Amendment violation. As explained supra, the deliberate indifference standard affords prison medical authorities "considerable latitude" in exercising their judgment in the treatment of prisoners. Inmates of Allegheny Cnty. Jail, 612 F.2d at 762. Plaintiff stipulates that he received multiple prescription medications and injections for pain. That Plaintiff wanted

different medications from those that Dr. Turner-Foster and Dr. Patel prescribed does not constitute deliberate indifference.  <u>White</u>, 897 F.2d at 109.

In sum, Plaintiff has not established that Dr. Turner-Foster and Dr. Patel were deliberately indifferent to his medical needs. Although the Record clearly demonstrates that Plaintiff suffers from severe chronic pain, it does not support a finding that Dr. Turner-Foster and Dr. Patel violated Plaintiff's Eighth Amendment rights.  As such, the Court grants Defendants' Motion for Summary Judgment on the grounds that Plaintiff has not established a constitutional violation.  The Court therefore need not address the issue of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.  An appropriate Order will issue today.

Dated: 11/10/15                                       s/Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge